## CIRCUIT COURT OF SHENANDOAH COUNTY

Commonwealth of Virginia

v.

Virginia Live Fur Parade, Inc.

Commonwealth of Virginia

v.

Frank B. Childress

March 29, 1957

By JUDGE ELLIOTT MARSHALL

Both of these cases involve substantially the same facts and questions of law and can be combined for the purpose of this opinion.

Each of the defendants operates a wild animal exhibit in Shenandoah County. Although it is contended that the operations have some educational value and school children are admitted free of charge, there is no question that profit is the main purpose. The animals are confined for display in cages or other enclosures. The spectators pay a fee for admittance and, unaccompanied by guides, pass by the cages viewing the animals, which are totally untrained. There is no performance of any kind. These businesses have been in existence for some years and there has been no attempt to exact from them the license fees required by Code Sections 58-271 and 58-272 until 1956, when demand was made and upon refusal criminal warrants were issued against the defendants.

The defendants moved to strike out all of the evidence on the ground that it has not been shown that their busines-

ses are included under the provisions of the statutes in question.

Chapter 7 of the Tax Code now provides for State licensing of almost every conceivable business enterprise, the main purpose being the collection of revenue. The Code Sections in question are contained under Taxation, Article 2, which is entitled "Amusements."

Both of these sections were included in the original licensing act of 1884, Acts 1883-4, p. 593. The language is almost identical. In fact we can find no changes which would alter the construction which is required in these proceedings.

## Theatres

80. No person shall, without a license authorized by law, exhibit for compensation any theatrical performance, *or any performance similar thereto, panorama, or any public performance or exhibition of any kind*, lectures, literary readings and performances, except for benevolent or charitable purposes. Whenever a theatrical performance shall be licensed, the actors acting thereat under the license shall be exempt from an assessment; but unless the performance shall be so licensed, each person engaged therein shall be liable to the penalty for the violation of this section.

In the same Act, p. 594, we find immediately following a requirement for the licensing of menageries.

## Shows, Circuses and Menageries

82. No person shall, without a license authorized by law, exhibit any show, circus performance, or any menagerie or such like exhibition or performance; but this section shall not be construed to prohibit a resident mechanic or artist from exhibiting any production of his own art or invention without compensation. Whenever such show, exhibition or performance, circus or menagerie shall be licensed, those engaged

therein and operating under the license shall be exempt from a license tax for performing or acting thereat.

There can be no doubt that the businesses in question would have been subject to license under the provisions of Sections 82, 83 and 84 and not under Sections 80 and 81 (Acts 1884). Webster defines the word menagerie:

1. A collection of wild or strange animals kept in cages or enclosures, especially for exhibition.
2. A place where such animals are kept. (Webster's New Twentieth Century Dictionary, 2nd Ed. Unabridged.)

Section 82 remained essentially unchanged until 1910 when it was amended as to the pertinent portion as follows:

107. Every person, firm, company or corporation who exhibits or gives performances in a side show, dog and pony (or either) show, trained animal show, circus, menagerie *and* circus, or any other show, exhibition or performance similar thereto, shall procure a license therefor . . . . (Acts 1910, p. 387)

As we have observed, it is obvious that prior to 1910 a menagerie not operated in conjunction with a circus and involving no "performances" would be subject to the license, but the 1910 amendment unquestionably excluded such enterprises. The probable reason is that almost no menageries were operated independently of a circus, and the tax was so high as to render such a business unprofitable. Whatever the reason the legislature excluded businesses such as those in the instant case.

The present statute, Code Section 58-276, is in substantially the same language as the 1910 Act, and, for the same reason, the defendants' businesses are not covered thereunder.

Could it be said that the legislature, by its exclusion of independent menageries under the Code Section specifically designed for them, intended to include them under the

theatre licensing provision? Such a purpose is conceivable, but extremely unlikely. A menagerie is remotely akin to a theatre, but once the legislature singled it out for special treatment in a separate category with circuses and like amusements, the mere fact of its elimination from that category would not carry with it the design to include it in another, especially in view of its much closer relationship to the members of the class from which it has been excluded.

The probable key to the problem is that both Code Sections 58-271 and 58-276 contemplate only amusements involving active performances or, at least, some human activity of some character. In both sections each of the enumerated businesses involves either some kind of acting, reading or manual operation. Even a panorama (58-271) involved a person who shifted the scenes in the machine producing the panoramic display, and an interlocutor or lecturer who identified and explained the significance of the views displayed.

The only phrase contained in Section 58-271 which might conceivably be construed to cover a menagerie involving no performance is "or exhibition of any kind." The menageries involved in these cases are, of course, "exhibitions" in the broad sense of the word. But the phrase "exhibition of any kind" may not be taken in its general sense to include any businesses not possessing the characteristics of those specifically included in the statute. The rule of *ejusdem generis* and the broader maxim *noscitur a sociis*, of course, apply in the construction of all statutes. As to penal statutes the unquestioned rule of strict construction against the Commonwealth requiring the resolving of all uncertainties in favor of the defendants requires special scrutiny of the specifically described subjects of the statute to determine whether the defendants' businesses were intended to be included in the general language following. In this connection it should be noted that the word performance is used four times in the sentence describing the businesses subject to license; in fact, as we have observed, *every business specifically named expressly involves a performance* except a "panorama" which requires something closely akin thereto. If the term "exhibition of any kind" does not require a performance or at least a human act or manipulation

of some kind during the exhibition it is the only instance contemplated by the statute.

For these reasons I am of the opinion that the defendants' businesses are not included in those contemplated under the licensing statutes in question and I will enter judgment of not guilty in each prosecution.

I have not cited any authorities for the principles which I have enunciated because of their universal and unquestioned recognition. There are no Virginia cases specifically in point, but, of course, many which unanimously support the rules and maxims of construction which have been applied.